**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| FRANCIS RICHARD BENNETT, | : | Civil No. 06-3583 (JAP) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

> FRANCIS RICHARD BENNETT, #284762B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625
> Petitioner pro se

> MARY R. JULIANO, ASSISTANT PROSECUTOR
> MONMOUTH COUNTY PROSECUTOR
> Monmouth County Courthouse
> Freehold, New Jersey  07728-1789
> Attorneys for Respondents

**PISANO**, District Judge

Francis Richard Bennett filed a Petition for a Writ of Habeas Corpus pursuant to 28

U.S.C. § 2254(a) challenging a conviction in the Superior Court of New Jersey.  Respondents

filed an Answer, arguing that the Petition should be dismissed on the merits.  Petitioner filed two

Traverses, a motion for a stay pending receipt of the transcript in his civil suit, a motion to

expand the record to include this transcript, and a motion for discovery.  For the reasons

expressed below, the Court will deny Petitioner's motions, dismiss the Petition with prejudice, and decline to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on September 2, 1998, in the Superior Court of New Jersey, Law Division, Monmouth County, after a jury convicted him of first-degree murder, first-degree conspiracy to commit murder, and fourth-degree hindering apprehension.  The Law Division sentenced Petitioner to an aggregate 60-year term of incarceration, with 30 years of parole ineligibility.  Petitioner appealed.  In an opinion filed May 24, 2000, the Appellate Division of the Superior Court of New Jersey affirmed.  See State v. Bennett, No. A-1279-98T4 slip op. (N.J. Super., App. Div., May 24, 2000).  On September 26, 2000, the Supreme Court of New Jersey denied certification.  See State v. Bennett, 165 N.J. 531 (2000) (table).  The United States Supreme Court denied certiorari on January 8, 2001.  See Bennett v. New Jersey, 531 U.S. 1096 (2001) (mem.)

In October 2000, Petitioner filed a pro se petition for post-conviction relief in the Superior Court of New Jersey, Law Division.  On June 26, 2001, the Law Division denied relief.  Petitioner appealed, and on December 24, 2002, the Appellate Division reversed and remanded, finding that post-conviction relief counsel was ineffective.  See State v. Bennett, Docket No. A-6504-00T4 (N.J. Super., App. Div., Dec. 24, 2002).  On January 4, 2003, Petitioner filed an amended petition for post-conviction relief, which the Law Division denied on May 18, 2004. On October 1, 2004, the Law Division denied Petitioner's motion for additional discovery.  On January 30, 2006, the Appellate Division affirmed the denial of post-conviction relief and denial of additional discovery.  See State v. Bennett, 2006 WL 213920 (N.J. Super., App. Div., Jan. 30,

2006).  The New Jersey Supreme Court thereafter denied certification.  See State v. Bennett, 186

N.J. 604, 607 (2006) (table).

The Appellate Division set forth the relevant facts in this matter as follows:

The conviction arose out of the death of defendant's sister-in-law, Wanda Pandure.  Defendant was indicted for Wanda's murder.  Jamie Pandure, Wanda's husband, and Jamie's brother, Joel, were co-defendants . . . .

 [T]he police determined that defendant should be reinterviewed an on March 25, 1993, obtained an order to remove him from a New Jersey Department of Corrections holding facility in Kearney, where, having been sentenced on other, unrelated charges, he was being held.  They drove defendant to the Monmouth County Prosecutor's Office in Freehold, arriving at noon.  He was advised of his Miranda rights, which he waived in writing at 12:10 p.m.  At the outset, the police told defendant that they had spoken with Deslonde and the prostitute through whom the murder weapon had been purchased.  They did not provide defendant with any specific facts of the case.  Defendant was interviewed between 12:10 p.m. and approximately 3:35 p.m., during which time he continued to maintain that he had no knowledge of the homicide.

At 3:35 p.m., one of the detectives informed his partner that defendant was to be transported back to the county jail.  He then left the room to notify the assistant prosecutor of his intent to terminate the interview.  Shortly after, defendant decided to cooperate and spoke with the officers for approximately one hour before agreeing to provide them with a formal statement.

His detailed statement was consistent with what Deslonde had disclosed that defendant had told him in jail.  It also was consistent with other information the police had previously obtained . . . .  Defendant recounted the sequence of events on the day of the murder.  He and Joel had driven to Red Bank and arrived there at approximately 6:10 p.m.  They positioned their car across the street from Wanda's office, waiting for all the employees to leave.  Additionally, Jamie had called Wanda from their condominium and then called Joel to confirm that Wanda was alone in the office.

3

Defendant's description of the homicide itself was consistent with the murder scene as it was found the night of July 5, 1991 . . . . Defendant did not just give a detailed statement. In addition, the following day he showed the police the route that he and Joel had taken to the murder scene and on a visit to Wanda's office essentially recreated the murder. On April 1, 1993, he directed the police to the location in Lakewood where they had purchased the gun, and on April 8, assisted police divers in their search for the murder weapon in the Manasquan Inlet. The gun was never located. In January 1994, the police interviewed defendant a second time. He confirmed his previous statement. Also, in August 1994, defendant assisted the police in preparing a reconstruction animation of the murder.

Defendant testified during the trial. He denied any involvement in planning or carrying out the murder. He acknowledged signing a Miranda waiver on March 25, 1993, but also said that he had requested an attorney and was told that he did not need one. He considered the waiver "a formality" and "didn't actually comprehend those rights what they actually mean." He said he was told that his wife would be arrested and his daughter taken away if he did not cooperate. He was also told he was going to be returned to the county jail and taken before a judge "to see if he wants to charge you with murder." He told them that his life was in danger at that jail, and he had been assaulted there the previous week. He was told "this was [his] last chance to say something" before going to the county jail and defendant said he "just decided to go along with the thing." Defendant told the jury that the detectives "started to dictate information" to him and "coach" him along during the two hours prior to the written statement being taken. The next day the detectives took him to the office building and "one of the detectives pushed the button or pulled the button on the elevator" and them "after that they had [him] lie on the floor where the victim's body was." When the detectives took him to Manasquan, he "just pointed out anywhere's [sic] . . . and that was it." As to the visit to Lakewood, defendant testified that he "had nothing to do with the route they was [sic] driving."

State v. Bennett, Docket No. A-1279-98T4 slip op. at pp. 5, 11-15 (N.J. Super., App. Div., May 24, 2000).

4

Petitioner executed the Petition which is now before the Court on July 24, 2006.  The

Clerk received it on August 1, 2006.  The Court notified Petitioner of the consequences of filing

such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave

him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason

v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Petitioner asked the Court to rule on the Petition "as is."

The Petition presents nine grounds:

> Ground One:  PETITIONER'S STATEMENT WAS THE
> RESULT OF LENGTHY INTERROGATION AND THREATS,
> IN VIOLATION OF HIS FIFTH AMENDMENT RIGHT NOT TO
> GIVE EVIDENCE AGAINST HIMSELF AND THUS
> INVOLUNTARY AS A MATTER OF LAW AND SHOULD
> NOT HAVE BEEN ALLOWED IN EVIDENCE.
>
> Ground Two:  STATEMENTS GIVEN BY PETITIONER TO
> PROSECUTOR'S INVESTIGATORS ON MARCH 25, 1993
> WERE THE PRODUCT OF UNLAWFUL DETENTION AND
> THUS SHOULD NOT HAVE BEEN ADMITTED IN EVIDENCE
> AGAINST HIM.
>
> Ground Three:  ADMISSION OF PETITIONER'S FACTUAL
> BASIS GIVEN AT THE TIME OF HIS LATER-REJECTED
> PLEA WAS NOT HARMLESS ERROR AND THUS DENIED
> PETITIONER HIS RIGHTS TO DUE PROCESS AND A FAIR
> TRIAL.
>
> Ground Four:  IMPROPER INTRODUCTION OF
> SUBSTANTIAL HEARSAY TESTIMONY DEPRIVED
> PETITIONER OF A FAIR TRIAL AND HIS RIGHT TO
> CONFRONT WITNESSES.
>
> Ground Five:  THE COURT ERRED IN FAILING TO CHARGE
> THE JURY SUA SPONTE OF THE NECESSITY FOR
> CORROBORATION OF PETITIONER'S STATEMENTS TO
> POLICE.
>
> Ground Six:  THE TRIAL COURT ERRED IN FAILING TO
> GRANT A MISTRIAL AFTER A STATE'S WITNESS MADE

AN INCURABLY PREJUDICIAL REMARK IDENTIFYING PETITIONER AS THE "KILLER."

Ground Seven: THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AS THERE WAS NOT SUFFICIENT CORROBORATION OF PETITIONER'S STATEMENT.

Ground Eight: PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

Ground Nine: THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION TO COMPEL THE MONMOUTH COUNTY PROSECUTOR'S OFFICE AND/OR THE MONMOUTH COUNTY PUBLIC DEFENDER'S OFFICE TO PROVIDE DISCOVERY AND AS SUCH DENIED PETITIONER HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

(Pet. ¶ 12.A - 12.I.)

The State filed an Answer seeking dismissal of the Petition on the merits. Petitioner filed two Traverses, a motion to stay the Petition while he obtains a transcript of a civil action Petitioner litigated against Detective Dowling, a motion to expand the record to include this transcript, and a motion for discovery.

## II. STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested. See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

6

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[1]  Nor may the Court recharacterize a ground asserted under state law into a

---

[1] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements

(continued...)

7

federal constitutional claim.[2]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated Petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -

---

[1](...continued)
[petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[2] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits").  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a

9

federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. § 2254(a), (d)(2).

The grounds raised in the Petition are governed by 28 U.S.C. § 2254(d)(1), which prohibits a district court from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Williams, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable"

must be judged objectively; an application may be incorrect, but still not unreasonable.[3]  Id. at

409-10.  "The unreasonable application test is an objective one - a federal court may not grant

habeas relief merely because it concludes that the state court applied federal law erroneously or

incorrectly."  Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395

F. 3d 92, 100 (3d Cir. 2005)).

## III.  DISCUSSION

A.  Self-Incrimination

In Ground One, Petitioner asserts that his "STATEMENT WAS THE RESULT OF

LENGTHY INTERROGATION AND THREATS, IN VIOLATION OF HIS FIFTH

AMENDMENT RIGHT NOT TO GIVE EVIDENCE AGAINST HIMSELF AND THUS

INVOLUNTARY AS A MATTER OF LAW AND SHOULD NOT HAVE BEEN ALLOWED

IN EVIDENCE."  (Pet. ¶ 12.A.)  As factual support, Petitioner asserts, in relevant part:

> During a five-day Miranda hearing, petitioner testified that he
> was threatened and coerced by detectives in the giving of his
> alleged statement, albeit false.  Petitioner was questioned
> continuously from 12:10 p.m. through 3:30 p.m, during which time
> he steadfastly denied knowledge of the murder.  During the course
> of the interrogation, petitioner was threatened with the arrest of his
> wife, loss of his infant daughter and promised that in exchange for
> a "confession" he would receive a concurrent sentence with the
> sentence he was then serving . . . .  According to Detective

---

[3] "[D]ecisions of federal courts below the level of the United States Supreme Court may
be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly
established United States Supreme Court precedent, as well as helpful amplifications of that
precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal
quotation marks omitted).

11

Dowling, he decided to terminate the interview at 3:30 p.m., presumably because petitioner would not otherwise confess. Undenied by Detective Dowling, however, is the fact that petitioner clearly was threatened with being not taken back to State Prison, but rather the county jail, which he feared, on the alleged ground that it was not enough time to take him back to State Prison. It was at this point that petitioner gave his statement, and after doing so, he was in fact taken back to State Prison, the even later hour notwithstanding. The quid pro quo here is obvious. Indeed Detective Dowling was quite explicit in giving his opinion that petitioner gave his statement because he didn't want to go back to the Monmouth County Jail. The police wanted answers and were determined to get them . . . . Petitioner also testified about the impact of previous fears and threats by the Monmouth County authorities and his mistrust of the system. The fact that petitioner had been placed in fear and threatened by the Monmouth County authorities in the past had a direct bearing on the extent of his voluntariness in the giving of his subsequent statement, a statement which resulted in petitioner's conviction for the murder of Wanda Pandure.

(Pet. ¶ 12.A., pp. 4-7.) (footnotes omitted)

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination. See Malloy v. Hogan, 378 U.S. 1, 8 (1964). In Miranda v. Arizona, 384 U.S. 436 (1966), the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467. When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief. See Oregon v. Elstad, 470 U.S. 298, 317 (1985). Thus, a

12

confession taken during a custodial interrogation without the provision of <u>Miranda</u> warnings

violates the privilege against self incrimination.  See <u>Thompson v. Keohane</u>, 516 U.S. 99 (1995).

"To safeguard the uncounseled individual's Fifth Amendment privilege against self-

incrimination, the <u>Miranda</u> Court held, suspects interrogated while in police custody must be told

that they have a right to remain silent, that anything they say may be used against them in court,

and that they are entitled to the presence of an attorney, either retained or appointed, at the

interrogation."  <u>Thompson</u>, 516 U.S. at 107; <u>see also</u> <u>Miranda</u>, 384 U.S. at 479.

The <u>Miranda</u> Court also outlined the procedures to be followed after the police provide

the warnings.  If the accused requests counsel, "the interrogation must cease until an attorney is

present."  <u>Miranda</u>, 384 U.S. at 474.[4]  "*Miranda* thus declared that an accused has a Fifth and

Fourteenth Amendment right to have counsel present during custodial interrogation."  <u>Edwards</u>

<u>v. Arizona</u>, 451 U.S. 477, 481 (1981).  The <u>Miranda</u> Court emphasized that "[t]he defendant may

waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and

intelligently."  <u>Miranda</u>, 384 U.S. at 444.  The Court articulated the two-pronged test for waiver

in <u>Moran v. Burbine</u>, 475 U.S. 412 (1986):

> First, the relinquishment of the right must have been voluntary in
> the sense that it was the product of a free and deliberate choice
> rather than intimidation, coercion, or deception.  Second, the
> waiver must have been made with a full awareness of both the
> nature of the right being abandoned and the consequences of the
> decision to abandon it.  Only if the totality of the circumstances

---

[4] <u>Compare</u> <u>Davis v. United States</u>, 512 U.S. 452, 461 (1994) (holding that police were not
required to stop questioning suspect after he remarked, "Maybe I should talk to a lawyer"
because, "after a knowing and voluntary waiver of the <u>Miranda</u> rights, law enforcement officers
may continue questioning until and unless the suspect clearly requests an attorney") <u>with</u> <u>Oregon</u>
<u>v. Bradshaw</u>, 462 U.S. 1039, 1041-41 (1983) ("I do want an attorney before it goes very much
further"); <u>Edwards</u>, 451 U.S. at 479 ("I want an attorney before making a deal").

> surrounding the interrogation reveal both an uncoerced choice and
> the requisite level of comprehension may a court properly conclude
> that the Miranda rights have been waived.

Id. at 421 (citations and internal quotation marks omitted).

As the Third Circuit explained in a § 2254 case,

> This inquiry requires us to consider the totality of the
> circumstances surrounding the interrogation, which includes
> examining the events that occurred and the background,
> experience, and conduct of the defendant.  Miranda rights will be
> deemed waived only where the totality of the circumstances
> "reveal[s] both an uncoerced choice and the requisite level of
> comprehension."

Reinert v. Larkins, 379 F.3d 76, 88 (3d Cir. 2004) (quoting Moran, 475 U.S. at 421) (citations

omitted).

"We do not suggest that compliance with Miranda conclusively establishes the

voluntariness of a subsequent confession. But cases in which a defendant can make a colorable

argument that a self-incriminating statement was "compelled" despite the fact that the law

enforcement authorities adhered to the dictates of Miranda are rare."  Berkemer v. McCarty, 468

U.S. 420, 433 (1984).[5]

--------

[5] In addition to Fifth Amendment rights, the Due Process Clause prohibits a coerced
confession:

> Under the due process approach . . . , courts look to the totality of
> circumstances to determine whether a confession was voluntary.
> Those potential circumstances include not only the crucial element
> of police coercion, *Colorado v. Connelly,* 479 U.S. 157, 167, 107
> S.Ct. 515, 521, 93 L.Ed.2d 473 (1986); the length of the
> interrogation, *Ashcraft v. Tennessee,* 322 U.S. 143, 153-154, 64
> S.Ct. 921, 925-926, 88 L.Ed. 1192 (1944); its location, see *Reck v.*
> *Pate,* 367 U.S. 433, 441, 81 S.Ct. 1541, 1546, 6 L.Ed.2d 948
> (1961); its continuity, *Leyra v. Denno,* 347 U.S. 556, 561, 74 S.Ct.

(continued...)

14

However, "*Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust . . . .  Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns."  Illinois v. Perkins, 496 U.S. 292, 297-298 (1990).

Petitioner presented Ground One to the Appellate Division on direct appeal.  The Appellate Division rejected the claim, finding that Petitioner's statements were voluntary and knowingly made:

> The critical issue as to those statements is whether they were knowing and voluntary.  As to that there was ample evidential basis arising from the five-day Miranda hearing to support the judge's finding that the statements were, beyond a reasonable doubt, knowing and voluntary, a conclusion we have no basis to disturb.

State v. Bennett, Docket No. A-1279-98T4 slip op. at 18.

This Court finds that the adjudication of Ground One by the New Jersey courts was not contrary to, or an unreasonable application of Supreme Court precedent.  See 28 U.S.C. § 2254(d)(1).  Petitioner is accordingly not entitled to habeas relief on Ground One.

---

[5](...continued)

> 716, 719, 98 L.Ed. 948 (1954); the defendant's maturity, *Haley v. Ohio,* 332 U.S. 596, 599-601, 68 S.Ct. 302, 303-305, 92 L.Ed. 224 (1948) (opinion of Douglas, J.); education, *Clewis v. Texas,* 386 U.S. 707, 712, 87 S.Ct. 1338, 1341, 18 L.Ed.2d 423 (1967); physical condition, *Greenwald v. Wisconsin,* 390 U.S. 519, 520-521, 88 S.Ct. 1152, 1153-1154, 20 L.Ed.2d 77 (1968) ( *per curiam* ); and mental health, *Fikes v. Alabama,* 352 U.S. 191, 196, 77 S.Ct. 281, 284, 1 L.Ed.2d 246 (1957). They also include the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation.

Withrow v. Williams, 507 U.S. 680, 693-694 (1993).

B.  Confession - Product of Unlawful Detention

In Ground Two, Petitioner asserts that "STATEMENTS GIVEN BY PETITIONER TO

PROSECUTOR'S INVESTIGATORS ON MARCH 25, 1993 WERE THE PRODUCT OF

UNLAWFUL DETENTION AND THUS SHOULD NOT HAVE BEEN ADMITTED IN

EVIDENCE AGAINST HIM."  (Pet. ¶ 12.B.)  As factual support, Petitioner states, in relevant

part:

> Further undisputed in the record of the trial court's findings is
> that Prosecutor's Detectives obtained a writ to remove petitioner
> from State prison wherein he was serving his sentence for his drug
> conviction so that they could question him about the murder of
> Wanda Pandure . . . .
>
> The Detectives admittedly had no intention of complying with
> the terms of the writ.  Thus, essentially, the Detectives decided that
> they would go and get the petitioner and take him to an
> interrogation room of the Prosecutor's Office, against his will, and
> question him until he confessed, by the device of obtaining an
> order from a Superior Court Judge not for that specific purpose,
> but simply so that they could obtain his custody from the
> Department of Corrections.
>
> The Detectives had no right to the person of the petitioner on
> March 25, 1993.  The use of the writ itself was unlawful . . .
> Petitioner submits that the detectives custody of his person was
> unlawful and thus any resulting statement was unlawfully obtained
> and should not have been admissible in evidence at trial.

(Pet. ¶ 12.B. at pp. 11-12.)

In the Answer, the State maintains that this Court lacks jurisdiction over Ground Two

because it raises a question of state law and does not assert violation of federal law.

Alternatively, the State argues that, to the extent Ground Two asserts a Fourth Amendment

16

claim, the claim is barred by <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976), because the state

provided an opportunity for a full and fair litigation of the claim.

Petitioner presented this claim to the Appellate Division on direct review.  The Appellate

Division rejected the claim on the ground that the failure to take Petitioner before a court did not

affect the legality of his removal from jail and placement in the custody of the Prosecutor or the

voluntariness of his confession.  Specifically, the Appellate Division found:

> Removal of a prisoner, therefore, from a place of confinement and
> into the custodial control of another needs only a court order or
> writ.  The prosecutor obtained such an order here and defendant
> was, then, lawfully released into his custody.
>
> It is undisputed, however, that defendant never appeared before a
> court in connection with his removal from the Kearney
> preadmission unit on March 25, despite the direction on the face of
> the order.  But that does not affect the legality of his removal from
> Kearney and placement in the custody of the Prosecutor.  Neither
> does the failure to thereafter take him to a Superior Court judge
> affect the voluntariness of the March 25 statements.  The critical
> issue as to those statements is whether they were knowing and
> voluntary.  As to that there was ample evidential basis arising from
> the five-day <u>Miranda</u> hearing to support the judge's finding that the
> statements were, beyond a reasonable doubt, knowing and
> voluntary, a conclusion we have no basis to disturb.

<u>State v. Bennett</u>, Docket No. A-1279-98T4 slip op. at 18.

Petitioner does not assert in Ground Two that admission of his confession violated federal

law.  This Court agrees with the state that habeas relief is not permitted on Ground Two because

it does not assert a federal claim.[6]  <u>See</u> <u>Waldrop v. Jones</u>, 77 F. 3d 1308, 1317 (11th Cir. 1996)

---

[6] In his Traverse, Petitioner relies on <u>United States v. Santiago</u>, 3 F. Supp. 2d 392, 397-99
(S.D.N.Y. 1998), for the proposition that "the District Court held that misuse of a writ, as here,
violates a defendant's constitutional rights and warrants suppression of his statement."  (Traverse
at p. 5.)  However, <u>Santiago</u> does not support Petitioner, as the court did not find that misuse of a
(continued...)

("It is possible that the Talladega County police violated Alabama law by moving the petitioner to Talladega County; however, that question is not before us.  Moreover, a violation of state law does not necessarily render a confession involuntary"); United States v. Rose, 541 F. 2d 750, 756 (8th Cir. 1976) ("Defendant argues that . . . Sheriff Price had no right to arrest him in Jackson County.  That argument does not rise to constitutional dignity.  We are concerned here not with whether state law was violated but with whether the defendant was deprived of a federally protected right"); United States v. Coppola, 281 F. 2d 340, 341 n.1 (2d Cir. 1960) ("The government concedes that the delay of several hours by the local police in arraigning Coppola constituted an unlawful detention under New York law . . . .  In our view, however, whether a detention is illegal under state law has no bearing upon the propriety of receiving admissions in evidence in a federal criminal proceeding").  Moreover, the Appellate Division determined that Petitioner's placement in the hands of the prosecutor did not violate New Jersey law, and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005).[7]  Thus, Petitioner is not entitled to habeas relief on Ground Two.

---

[6](...continued)
writ was unconstitutional.  The Santiago court found that use of 28 U.S.C. § 2241 to produce Santiago for an investigative interview with law enforcement officers was not authorized and that the writ was "misused," but "even if a different writ could have been used, a question I need not answer, the Government concededly must not violate a defendant's constitutional rights. Because I have earlier found that Santiago's [Sixth Amendment] rights were violated, the misuse of the writ in this case must result in suppression."

[7] Petitioner filed motions to expand the record and for a stay to expand the record to include transcripts in his civil suit against Detective Dowling.  Petitioner states that he brought a civil action against Dowling on December 5, 2005, and that the judge granted Dowling's motion to dismiss on statute of limitations grounds on December 15, 2006.  Petitioner states that alleged
(continued...)

C.  Admission of Factual Basis of Voided Plea

In Ground Three, Petitioner argues that "ADMISSION OF PETITIONER'S FACTUAL

BASIS GIVEN AT THE TIME OF HIS LATER-REJECTED PLEA WAS NOT HARMLESS

ERROR AND THUS DENIED PETITIONER HIS RIGHTS TO DUE PROCESS AND A FAIR

TRIAL."  (Pet. ¶ 12.C.)  As factual support, Petitioner asserts, in relevant part:

> The Appellate Division found that it was error for the trial court
> to permit evidence of the factual basis given by petitioner as part of
> his later-rejected guilty plea (and thus evidence of the plea itself),
> but determined that, given other evidence (primarily the statements
> referred to in Ground One, supra), any such error was harmless
> beyond a reasonable doubt.  Even if those other statements were
> properly admitted, petitioner asserts that proof of a guilty plea is
> evidence so overwhelming and conclusive that no jury could ever
> return any finding but guilty.  The factual basis in support of
> petitioner's plea of guilty made it virtually impossible to convince
> a reasonable jury that his out-of-court statement was false and the
> product of fears, threats and coercion and thus untrustworthy when
> that statement mirrored the in-court statement which was given
> under oath, in the solemnity of a courtroom, with counsel present,
> to a judge while formally admitting guilt to a very serious crime.

(Pet. ¶ 12.C. at pp. 14-15.)

---

[7](...continued)
in that case that Dowling had violated his rights under state law by using a writ to remove him
from prison on March 25, 1993, and then taking him to the Prosecutor's Office for questioning
rather than a court as directed by the writ.  Petitioner asserts that the transcripts "would greatly
assist this Court in concluding that my custody on March 25, 1993, was unlawful and that the
Appellate Division's decision is arbitrary and erroneous and thus, my alleged statement should
have been suppressed.  The transcripts would also assist this Court in conclusion that the
Appellate Division's ruling that the introduction of evidence of the factual basis of the plea . . .
was not harmless error."  (Petitioner's Certification dated Jan. 15, 2007, ¶ 8.)  This Court will
deny the motions, as it is dismissing the Petition on the merits and such transcripts are not
necessary to decide Petitioner's federal claims.  See 28 U.S.C. § 2254 Rule 7(a) ("If the petition
is not dismissed, the judge may direct the parties to expand the record by submitting additional
materials relating to the petition").

In the Answer, the State argues that Ground Three does not warrant habeas relief because the Appellate Division's determination that use of the factual basis of Petitioner's plea against him at trial was harmless error was not an unreasonable application of Supreme Court precedent.

Petitioner presented Ground Three on direct appeal, and the Appellate Division rejected the claim on the ground that, while New Jersey court rules prohibited use of the statements, the error was harmless. Specifically, the Appellate Division rejected the claim as follows:

> [D]efendant's plea agreement contained an explicit provision in paragraph 5 that his statements could be used against him in the event he breached the agreement. While the judge below did preclude the State from using the statements in its main case, he permitted their use as impeachment evidence. In doing so, the judge relied on United States v. Mezzanatto, supra, 513 U.S. at 210-211, . . . , in which, in the context of use of a defendant's plea statements for impeachment purposes, the United States Supreme Court held that the exclusionary protections of Fed. R. Evid. 410 could be waived. There, the defendant had explicitly agreed to such a waiver. In reversing the Court of Appeals' determination that the waiver agreement was prohibited by Fed. R. Evid. 410, Justice Thomas found no basis for assuming that Congress intended to override the presumption that "legal rights generally, and evidentiary provisions specifically, are subject to waiver by voluntary agreement of the parties." Id. at 203, 130 L. Ed. 2d at 705. The only requirement for such waivers is that they be knowing and voluntary. Id. at 210 . . . . In Mezzanatto, supra, 513 U.S. at 211, . . . , the Court observed that the defendant "has never complained that he entered into the waiver agreement. . . unknowingly or involuntarily . . . ."
>
> Defendant contends that the record is insufficient to establish that his waiver of his rights regarding use of the plea statement was knowing and voluntary. He points out that the plea judge made no determination of whether defendant understood he was waiving those rights and, in fact, the judge gave no indication of being aware the plea agreement included such a waiver. During the colloquy the prosecutor stated to the court that he had outlined "the sum and substance of the plea agreement" but made no mention of the fact that defendant had waived the protections of

N.J.R.E. 410 . . . .   No mention was there made of not only the risk of perjury or false swearing trial, but also of use of the plea statement in a trial on the charges in the event the plea bargain was breached.  At no point during the plea proceeding was the waiver provision of paragraph five mentioned.

Confronting similar circumstances in United States v. Young, 73 F. Supp. 2d 1014, 1023-25 (N.D. Iowa 1999), one federal court recently determined that the record could not support a determination that the defendant's waiver was made knowingly . . . .  The plea agreement in Young contained a paragraph stating that if the defendant breached the agreement, "he face[d] the following consequences," including that "all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding."  Ibid. . . . .   The court concluded that a "defendant cannot 'knowingly' waive rights unless he in fact 'knows' he or she has such rights in the first place."  Id. at 1024 . . .

In this case, there is no evidence that defendant was aware of his right not to have his plea statements used against him except in the context of a perjury trial.  Moreover, the plea colloquy was misleading for both defendant and the court.  First, the prosecutor made no mention of the waiver and compounded the error by affirmatively stating only that defendant had agreed to cooperate "knowing full well that if he fails to do so he facts potential prosecution for perjury or false swearing."  See N.J.R.E. 410(2).  Second, although the court informed defendant of the other rights he was waiving, such as his right to a grand jury, his right to remain silent, his right to a jury trial, and his right to confront witnesses, it made no mention of defendant's rights under the plea-statement rule protecting the use of his statement.  The record provides no basis to conclude that defendant ever knew those rights existed, much less that he was waiving them.  The trial judge, then, erred in permitting the State to use defendant's statements, if even for impeachment purposes.

Nonetheless, we are convinced that error was harmless in this case.  The erroneous admission of evidence will prejudice a defendant's right to a fair trial only when there is a reasonable possibility that the evidence might have contributed to the defendant's conviction.  State v. Roach, 146 N.J. 208, 226 (1996),

21

cert. denied, 519 U.S. 1021 . . . (1996).  "The answer to that question turns on whether the error was harmless considering the other evidence of guilt."  Ibid. . . . .

   Here, aside from the plea statements, the jury also heard motive evidence, the "jail house" confession evidence offered by Deslonde, defendant's own extensive and detailed confession, and his subsequent reenactment of the critical events and cooperation in efforts to locate the gun.  The jury also heard the evidence of William Gray concerning the gun.  Thus defendant's admissions in the plea statements also had been presented to the jury in two other forms, his confession to the police and his remarks to Deslonde both of which occurred long prior to the plea.  His recreations of the murder, too, lent credence to his confessions.  Further, the details provided by Deslonde to the police are so extensive and specific that it is almost impossible to imagine they came from some other source or were made up by Deslonde.  In light of the other evidence, we are convinced that any impact from the use of defendant's plea statements, which simply mimicked the prior confessions, was minimal.  We are convinced the jury disbelieved defendant's tale of coercion and coaching and would have convicted him regardless of the plea statements.

State v. Bennett, Docket No. A-1279-98T4 slip op. at pp. 29-35.

Petitioner asserts in Ground Three that the state's use of his plea statements to impeach his trial testimony violated his rights to due process, and that the admission of his statements was not harmless error.  However, the right prohibiting use of the plea statements arises not from the Due Process Clause, but the New Jersey Court Rules, and neither Petitioner nor the Appellate Division cites any Supreme Court precedent holding that use of a plea statement to impeach a defendant who testifies inconsistently violates the Due Process Clause of the Fourteenth Amendment.[8]  Rather, Supreme Court precedent suggests that use of the plea statement to

_____

   [8] This Court notes that United States v. Young, 73 F. Supp. 2d 1014 (N.D. Iowa 1999), on which the Appellate Division relied to find that Petitioner's written waiver of the plea-statement rules was not knowing and voluntary, was reversed by the Court of Appeals three months after

(continued...)

impeach Petitioner's inconsistent trial testimony does not violate the Constitution, particularly since Petitioner had already testified about the guilty plea itself on direct examination.[9]  Cf. Harris v. New York, 401 U.S. 222 (1971) (defendant's confession, which was inadmissible against defendant in prosecution's case because defendant had not been advised of his Miranda rights, was properly used to impeach defendant's inconsistent trial testimony).[10]  Because the New Jersey court rules are not federal law and Petitioner has no due process right prohibiting the

---

[8](...continued)
the Appellate Division issued its decision.  See United States v. Young, 223 F. 3d 905 (8th Cir. 2000).  "We disagree with the District Court's conclusion that, absent some proof that Young was made aware of the specific provisions of the plea-statement rules, his waiver is rendered unknowing.  We do not believe that the failure to include a rote recitation of the rules in the plea agreement constitutes an 'affirmative indication that the agreement was entered into unknowingly or involuntarily.'  Mezzanatto, 513 U.S. at 210 . . .  We are satisfied that, when Young signed the plea agreement, he was aware of the benefits he was securing, the rights he was foregoing, and the consequences of breaching the agreement.  We find no evidence that he entered into the agreement involuntarily or unknowingly.  Thus, the government is entitled to the benefit of its bargain and may use the affidavit in its case against Young."  Id. at 911.

[9] In his direct testimony, Petitioner "denied any involvement in planning or carrying out the murder."  State v. Bennett, Docket No. A-1279-98T4 slip op. at p. 14.  "In his direct examination, defendant also testified concerning a plea he had previously entered and the factual basis he had provided.  On cross-examination, the prosecutor read to the jury the entire factual basis that defendant had then given for his plea.  Defendant told the jury, however, that the factual basis he provided the court was false, and that he 'was always under threats' and mistrusted the 'system' based on his experience of having been denied admission to a drug program . . . .  He said he continued 'to go along with the fabricated story' because he believed that, otherwise, he would be returned to the county jail."  Id. at pp. 15-16.

[10] "Petitioner's testimony in his own behalf concerning the events of January 7 contrasted sharply with what he told the police shortly after his arrest.  The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility . . . .  Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process."  Harris, 401 U.S. at 225 (footnote omitted).

23

use of his plea statement for impeachment purposes, Ground Three does not assert a federal claim and this Court lacks jurisdiction over Ground Three.

Even if this Court had jurisdiction over Ground Three, Petitioner would not be entitled to habeas relief because the Appellate Division's decision to dispose of the claim on harmless error grounds was not contrary to, or an unreasonable application of, Supreme Court precedent.  In Mitchell v. Esparza, 540 U.S. 12 (2003) (per curiam), the Supreme Court reversed the granting of habeas relief under § 2254(d)(1) where the Court of Appeals had affirmed the grant of habeas relief after concluding that the Ohio Court of Appeals had improperly subjected Esparza's constitutional claim to harmless error review.  The Supreme Court reasoned:

> In relying on the absence of precedent to . . . hold that harmless-error review is not available for this type of Eighth Amendment claim, the Sixth Circuit exceeded its authority under § 2254(d)(1).  A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous.  As the Ohio Court of Appeals' decision does not conflict with the reasoning or the holdings of our precedent, it is not "contrary to . . . clearly established Federal law."

> The question then becomes whether the Ohio Court of Appeals' determination is an "unreasonable *application* of clearly established Federal law."  § 2254(d)(1) (emphasis added; punctuation omitted).  A constitutional error is harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  Neder, supra, at 15, 119 S. Ct. 1827 (quoting Chapman v. California, 386 U.S. 18, 24 . . . .  We may not grant respondent's habeas petition, however, if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the Ohio Court of Appeals applied harmless-error review in an "objectively unreasonable" manner.  Lockyer v. Andrade, 538 U.S. 63, 75-77 . . . .  The Ohio Court of Appeals' conclusion was hardly objectively unreasonable.

Mitchell, 540 U.S. at 17-18.

In this case, Petitioner cites no Supreme Court precedent holding that harmless-error review is not available for the claim he presents, and Supreme Court precedent indicates that harmless-error review applies.  Specifically, in Arizona v. Fulminante, 499 U.S. 279, 310 (1991), the Supreme Court determined that the unconstitutional admission of an involuntary confession is subject to the harmless-error analysis:

> The evidentiary impact of an involuntary confession, and its effect upon the composition of the record, is indistinguishable from that of a confession obtained in violation of the Sixth Amendment - of evidence seized in violation of the Fourth Amendment - or of a prosecutor's improper comment on a defendant's silence at trial in violation of the Fifth Amendment.  When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt . . . .  [W]e have previously held that the admission of a defendant's statements obtained in violation of the Sixth Amendment is subject to harmless-error analysis.  In Milton v. Wainwright, 407 U.S. 371 . . . (1972), the Court held the admission of a confession obtained in violation of Massiah v. United States, 377 U.S. 201 . . . (1964), to be harmless beyond a reasonable doubt.  We have also held that the admission of an out-of-court statement by a nontestifying codefendant is subject to harmless-error analysis . . . .  The inconsistent treatment of statements elicited in violation of the Sixth and Fourteenth Amendments, respectively, can be supported neither by evidentiary or deterrence concerns nor by a belief that there is something more "fundamental" about involuntary confessions.

Fulminante, 499 U.S. at 310-312 (opinion of Rehnquist, C.J., for the Court).

Moreover, in Neder v. United States, 527 U.S. 1, 8 (1999), the Supreme Court explained that harmless-error reviews applies to most constitutional errors:

> We have recognized that "most constitutional errors can be harmless." *Fulminante, supra,* at 306, 111 S.Ct. 1246. "[I]f the

25

defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Indeed, we have found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction)).

Id., 527 U.S. at 8; see also United States v. Vazquez, 271 F. 3d 93, 103 (3d Cir. 2001) (holding that harmless-error analysis applies to violations of Apprendi v. New Jersey, 530 U.S. 466 (2000)).  Thus, the New Jersey courts' use of the harmless error analysis was not contrary to Supreme Court precedent.

Nor did the Appellate Division apply "harmless-error review in an objectively unreasonable manner."  Mitchell, 540 U.S. at 17-18.  A "constitutional error is harmless when it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  Id. at 17 (quoting Chapman v. California, 386 U.S. 18, 24 (1986)).  In finding the error harmless, the Appellate Division noted that "[t]he erroneous admission of evidence will prejudice a defendant's right to a fair trial only when there is a reasonable possibility that the evidence might have contributed to the defendant's conviction [and] [t]he answer to that question turns on whether the error was harmless considering the other evidence of guilt."  State v.

Bennett, Docket No. A-1279-98T4 slip op. at p. 34 (citations and internal quotation marks

omitted).  Given that "defendant's admissions in the plea statements also had been presented to

the jury in two other forms, his confession to the police and his remarks to Deslonde, both of

which occurred long prior to the plea . . . we are convinced that any impact from the use of

defendant's plea statements, which simply mimicked the prior confessions, was minimal.  We are

convinced the jury disbelieved defendant's tale of coercion and coaching and would have

convicted him regardless of the plea statements."  Id. at p. 35.

        In conclusion, because Petitioner's challenge in Ground Three to use of his plea statement

is grounded in New Jersey law, it does not present a federal claim.  Even if there were a

constitutional error, this Court "must defer to [the Appellate Division's] harmless error holding

because it was not in 'conflict with the reasoning or holdings of [Supreme Court] precedent' and

the court did not 'appl[y] harmless-error review in an objectively unreasonable manner.'"

Albrecht v. Horn, 485 F. 3d 103, 135 (3d Cir. 2007) (quoting Mitchell, 540 U.S. at 17-18).[11]

Thus, Petitioner is not entitled to habeas relief on Ground Three.

D.  Confrontation Clause

        In Ground Four, Petitioner asserts that "IMPROPER INTRODUCTION OF

SUBSTANTIAL HEARSAY TESTIMONY DEPRIVED PETITIONER OF A FAIR TRIAL

AND HIS RIGHT TO CONFRONT WITNESSES."  (Pet. ¶ 12.D.)  As factual support, Petitioner

asserts, in relevant part:

_____

        [11] See also Scherzer v. Ortiz, 111 Fed. Appx. 78, 85 (3d Cir. 2004) (holding under §
2254(d), that the Appellate Division's application of the harmless error standard under Chapman
v. California, 386 U.S. 18 (1967), was not unreasonable, since "the Supreme Court has not yet
spoken on whether the Cronic presumption of prejudice applies where counsel is temporarily
absent from non-critical stages of trial").

                                           27

Donovan then related that as a result of what [co-defendant Joel] Pandure told him, he had to speak with petitioner, implying a connection between Pandure's evasiveness and petitioner. Then, in direct response to the Prosecutor's inquiry, Donovan related over petitioner's continuing objection that petitioner's statement was inconsistent with what other witnesses had told him. Thus, although Donovan was a proper witness only to the statements given by petitioner, he made clear to the jury that codefendant Joseph Pandure, the alleged shooter, lied to Donovan and that the statements given by petitioner conflicted with the statements of several other witnesses implying that he, too, lied (and thus must be guilty) . . . . After properly relating what petitioner told him in an interview, Dowling went on to testify that he had occasion to question three persons - Louis Jacobs, Johnny Mae Brown and Avery Singletary - who never testified at trial, and then determined that petitioner should be questioned, an obvious allusion to their having relevant information which in some fashion implicated petitioner. He also, over objection, was permitted to testify that Lakewood police officers led him to a witness, a prostitute named Stacey Lasher, based upon the Detectives' description of the person to police; none of those Lakewood police officers testified. Then . . . , Dowling . . . advised the jury that he had received information that led him to believe that petitioner knew something about the Pandure murder and that they knew that he had something to do with the murder.

(Pet. ¶ 12.D. at pp. 17-18.)

Petitioner presented this claim to the Appellate Division on direct review, and the

Appellate Division rejected the claim without discussion.

The admissibility of evidence is generally a question of state law which is not cognizable

under habeas review. See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001); Hickey v.

Jeffes, 571 F.2d 762, 766 (3d Cir. 1978). However, the Sixth Amendment's Confrontation

Clause confers rights that cannot be satisfied merely by meeting the requirements of the hearsay

rules. The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall

enjoy the right ... to be confronted with the witnesses against him."  This guarantee applies to both federal and state prosecutions.  See Pointer v. Texas, 380 U.S. 400 (1965).

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination."  Id. at 53-54; see also Davis v. Washington, 126 S. Ct. 2266, 2273 (2006).  However, under the law in effect at the time of Petitioner's crime and conviction, the Supreme Court had held that the Confrontation Clause does not bar admission of testimonial hearsay against a criminal defendant if the statement has adequate indicia of reliability, i.e., falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness."  Ohio v. Roberts, 448 U.S. 56, 66 (1980).

In this case, Petitioner does not contend that the challenged statements are testimonial under Crawford.  Insofar as Petitioner's conviction became final on direct appeal before Crawford was decided, and Crawford is not retroactive to cases on collateral review, see Whorton v. Bockting, 127 S. Ct. 1173 (2007), Crawford is not applicable to Petitioner's case.

Petitioner asserts that Detectives Donovan and Dowling's testimony implied that Petitioner's original statements to police denying involvement in the murder were inconsistent with the statements of several other persons, including codefendant Joseph Pandure, and that information obtained from other non-testifying witnesses implicated Petitioner.  Petitioner does not cite Supreme Court precedent in support of Ground Four.  The State contends, and Petitioner's brief on direct appeal confirms, that Petitioner's Confrontation Clause claims are based on State v. Bankston, 63 N.J. 263 (1973), and its progeny, see State v. Branch, 182 N.J.

29

338, 348-353 (2005).  "Bankston, supra, makes clear that both the Confrontation Clause and the hearsay rule are violated when, at trial, a police officer conveys, directly or by inference, information from a non-testifying declarant to incriminate the defendant in the crime charged." Branch, 182 N.J. at 350.

The problem with Petitioner's Confrontation Clause claim is that this Court may not grant habeas relief unless the adjudication of Petitioner's claim was contrary to, or an unreasonable application of Supreme Court holdings, and the Supreme Court has not adopted the reasoning of the Bankston line of cases.  Because the adjudication of Petitioner's Bankston claim was not contrary to, or an unreasonable application of, Supreme Court precedent, Petitioner is not entitled to habeas relief on Ground Four.

E.  Corroboration of Petitioner's Statements

In Ground Five, Petitioner asserts that "THE COURT ERRED IN FAILING TO CHARGE THE JURY SUA SPONTE OF THE NECESSITY FOR CORROBORATION OF PETITIONER'S STATEMENTS TO POLICE."  (Pet. ¶ 12.E.)  As factual support, Petitioner asserts:

> [T]he entire thrust of the defense, including petitioner's testimony at trial, was that he was not involved in Wanda Pandure's death, that he knew very little about it, and that the statements he gave to the contrary were false.  Implicit in such a defense is the argument that the facts otherwise developed by investigators and produced in evidence, are not corroborative of his false statements . . . .  The Court [in charging the jury] in no way touched upon the necessity of the jury to find extrinsic evidence, beyond the circumstances surrounding the taking of the statement, supporting its truth.  There was no instruction whatsoever from the Court by which the jury could have been guided to the principle that the presence or absence of corroborating facts beyond those surrounding the giving of the statement itself must be considered in assessing its

> credibility . . . .  In this case, where there was so little, if anything, in evidence that agreed with the details spelled out by petitioner's statements, that failure to give an accurate charge as to the jury's function had the clear capacity to bring about an unjust result.

(Pet. ¶ 12.E. at pp. 19-22.).

The State argues that habeas relief is not permitted on Ground Five because the rule requiring corroboration is not constitutionally based.  Petitioner raised Ground Five as Point IV on direct appeal, and the Appellate Division summarily rejected the claim.

"It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused . . . .  The requirement of corroboration is rooted in 'a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused.'"  Wong Sun v. United States, 371 U.S. 471, 488-489 (1963).  The rule "has been consistently applied in the lower federal courts and in the overwhelming majority of state courts."  Smith v. United States, 348 U.S. 147, 152-153 (1954) .

The corroboration rule is not constitutionally based.  Thus, its alleged violation does not assert a violation of the Constitution, and this Court lacks jurisdiction to grant habeas relief on Ground Five.

F.  Failure to Grant Mistrial

In Ground Six, Petitioner asserts that "THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL AFTER A STATE'S WITNESS MADE AN INCURABLY

PREJUDICIAL REMARK IDENTIFYING PETITIONER AS THE "KILLER."  (Pet. ¶ 12.F.)

As factual support, Petitioner asserts:

> The prosecution called Trudy Bouldin, a coworker of the victim,
> Wanda Pandure.  The prosecutor sought to elicit from Ms. Bouldin
> that she was present at the office in March of 1993 when petitioner
> accompanied detectives to that location allegedly to describe the
> commission of the murder.  She told the jury that, coming from the
> parking lot, "I could see the detectives and the individual turn and
> face me.  The elevator doors closed and I know how long it takes to
> go up to the fifth floor I've done it so long, and I heard that loud
> ringing shrill and I said to myself I know they have the person who
> killed Wanda because they knew -  The petitioner immediately
> objected and the Court immediately instructed the jury to
> "disregard that completely."  The Court denied petitioner's
> subsequent application for a mistrial, finding that his cautionary
> instruction was sufficient and that the prosecutor did not
> intentionally solicit the witness's statement (footnote omitted).

(Pet. ¶ 12.F. at pp. 22-23) (footnote omitted).

Petitioner does not assert that the failure to order a mistrial violated his constitutional

rights.  Nor does he allege that the remark, which the judge immediately instructed the jury to

disregard, violated his constitutional rights.[12]  See Estelle v. McGuire, 502 U.S. 62 (1991)

(allowing evidence of prior injuries in a trial for infant murder, and refusing habeas relief for a

deficient jury instruction); Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (holding that denial of

---

[12] Cf. Donnelly v. DeChristoforo, 416 U.S. 637, 642, 644 (1974) ("not every trial error or
infirmity which might call for application of supervisory powers correspondingly constitutes" a
due process violation; "the judge directed the jury's attention to the remark particularly
challenged here, declared it to be unsupported, and admonished the jury to ignore it.  Although
some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate
their effect, the comment in this case is hardly of such character") (footnote omitted); Jackson v.
Carroll, 161 Fed. Appx. 190, 194 n.3 (3d Cir. 2005) (rejecting claim that trial counsel
was constitutionally ineffective in failing to request mistrial because a witness's response was
tantamount to inadmissible character evidence and concluding "that Lachette's testimony did not
warrant a mistrial, and defense counsel can not be faulted for failing to make a request that was
not likely to be granted").

motion for mistrial and giving of curative instructions did not violate due process, as "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.  We have no reason to believe that the jury in this case was incapable of obeying the curative instructions") (citations and internal quotation marks omitted).  Moreover, a "state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion." Arizona v. Washington, 434 U.S. 497, 517 (1978).

Because Petitioner does not assert a constitutional violation, this Court lacks jurisdiction over Ground Six.  Moreover, even if Petitioner claimed a violation of due process, habeas relief would not be permitted because the state courts' adjudication of the claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

G.  Verdict Against Weight of Evidence

In Ground Seven, Petitioner asserts:  "THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AS THERE WAS NOT SUFFICIENT CORROBORATION OF PETITIONER'S STATEMENT."  (Pet. ¶ 12.G.)  As factual support, Petitioner states:

> As set forth in Ground Five hereof, supra, petitioner's statements to investigators were essentially uncorroborated by extrinsic evidence.  Absent the impermissible hearsay testimony described above, there was nothing - other than the indisputable fact that the victim had been shot to death - to agree with what petitioner told the detectives, and what little there was, was easily explainable as having been available from reports, from the press, and from the

interrogators themselves.  There was no caution here to ensure that petitioner was not convicted out of his mouth of a crime committed by someone else.

   For the reasons set forth in Ground Five above, even the allowing of all favorable inferences and due deference to the credibility findings of the jury cannot save a verdict that is deficient as a matter of law, where the evidence, even if found true by the jury, could not be sufficient to corroborate petitioner's admissions. Absent petitioner's statements, there was no evidence at all here of his involvement in this crime.  Obviously a terrible crime was committed but there was nothing here to bring assurance that petitioner had not, because of pressure from interrogators or for whatever other reasons as set forth in Ground One and Ground Two above, confessed to a crime that he did not commit. Petitioner submits that because of this failure of proof, he was entitled to a direct judgment of acquittal, or at least a new trial.

(Pet. ¶ 12.G., Supporting Facts.)

The State argues in the Answer that Ground Seven does not assert a constitutional claim and, to the extent that it asserts a federal claim, relief is not warranted.  Petitioner presented Ground Seven to the Appellate Division as Ground VI on direct appeal.  The Appellate Division rejected the claim without discussion.

This Court lacks jurisdiction to grant habeas relief on Ground Seven because Petitioner does not claim a constitutional violation.  Moreover, this Court has reviewed Petitioner's brief to the Appellate Division on direct appeal, and Petitioner did not assert a federal constitutional

violation or rely on federal law regarding this claim in his brief on direct appeal.[13]  Thus, Petitioner is not entitled to habeas relief on Ground Seven.

## H.  Ineffective Assistance of Counsel

Petitioner claims in Ground Eight:  "PETITIONER WAS DENIED BOTH HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."  (Pet. ¶ 12.H.)  Petitioner contends that trial counsel was constitutionally ineffective in failing to present a reconstruction expert; failing to present evidence of his alibi; failing to present the testimony of investigator Thomas Beatty that Deslonde told him that Petitioner made up the whole story; failing to introduce videotape evidence of Petitioner's statements to Detective Ingling that Petitioner was not involved in the murder; failing to impeach the credibility of Nicole Bales and Detectives Dowling, Donovan, Coutu and McCarthy; failing to investigate Detective Dowling's request to have Petitioner hypnotized; failing to obtain the report prepared by Internal Affairs Officer Daniel Riggins regarding the illegal copying of Petitioner's outgoing mail which was used to support the motion to declare Petitioner's plea void; failing to introduce videotape evidence concerning the undercover sting operation of Detectives Ingling and Paglino; failing to present evidence of the conspiracy between the trial judge and Monmouth County authorities, and between Petitioner's attorney and the prosecutor; failing to present relevant

---

[13] As previously stated, see, supra at pp. 33-34, the rule requiring the corroboration of a confession is not constitutionally based.  See Wong Sun v. United States, 371 U.S. 471, 488-489 (1963).  To the extent that Petitioner asserts a due process claim, the rejection of such a claim was not contrary to, or an unreasonable application of Jackson v. Virginia, 443 U.S. 307, 318 (1979), and its progeny.  In Jackson v. Virginia, the Supreme Court determined that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324.

newspaper articles to show that Petitioner could have learned the details about the crime from the newspaper; and failing to provide Petitioner with discovery.  In addition, Petitioner asserts that counsel on direct appeal was constitutionally ineffective in failing to argue that the prosecutor's use of a writ was unconstitutional and that the statute authorizing the writ was unconstitutional.

The right to counsel is the right to the effective assistance of counsel, and trial counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  Id. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.  Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396.  The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d

36

308, 315 (3d Cir. 2002).  Defense counsel has a constitutionally imposed duty to consult with the

defendant about whether to appeal when "there is reason to think either (1) that a rational

defendant would want to appeal (for example, because there are nonfrivolous grounds for

appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was

interested in appealing."  Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  The term "'consult'

convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of

taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Flores-

Ortega at 478.  However, "it is a well established principle that counsel decides which issues to

pursue on appeal," Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel is

not constitutionally required to raise every nonfrivolous claim requested by the defendant, see

Jones v. Barnes, 463 U.S. 745, 751 (1983).  Appellate counsel "need not (and should not) raise

every nonfrivolous claim, but rather may select from among them in order to maximize the

likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000).

Petitioner presented his ineffective assistance of trial and appellate counsel claims on

appeal from the order denying post-conviction relief.  The Appellate Division rejected all claims,

finding that counsels' performance was not deficient, and that there was no prejudice:

> Given defendant's detailed statements, as well as the other
> evidence presented at the trial, the PCR judge found that
> defendant's uncorroborated allegations in his PCR application
> were insufficient to demonstrate that defense counsels' conduct fell
> outside the range of reasonable professional standards.  The judge
> also concluded that even if defendant's attorneys' performance was
> deficient, it did not deprive him of a fair trial.  See Strickland,
> supra, 466 U.S. at 687 . . .
>
> We have carefully reviewed the record in light of defendant's
> contentions and the applicable law.  We are satisfied that his

37

arguments are without merit and do not warrant discussion in a
written opinion . . . .  We affirm substantially for the reasons
expressed by Judge Del Bueno Cleary in her oral decision on May
14, 2004.  Defendant has not demonstrated that either trial
counsel's or appellate counsel's performance was deficient so that,
but for their alleged errors, the result of the proceedings would
have been different . . . .

State v. Bennett, Docket Nos. A-5968-03T4, A-2157-04T5, 2006 WL 213920 *6 (N.J. Super.,

App. Div., Jan. 30, 2006).

The Law Division judge rejected the claims as follows:

In the present case, the defendant argues he was deprived of
effective assistance of counsel based on a host of grounds.  And let
me just consider those grounds.  First, the defendant contends that
trial counsel failed to investigate an alibi defense.  Specifically, he
certifies that on July 5th, 1991, he placed a phone call to his sister,
Barbara.  He maintains that this alleged phone call was placed
shortly after six p.m., which was within the murder's timeframe . . .
Now, the defendant fails to demonstrate that a reasonable
probability that the failure to investigate this alibi materially
contributed to his conviction.  First, the defense alibi is weak in
substance.  Even if the jury heard and believed testimony regarding
a phone call placed by the defendant shortly after six p.m., there is
no reason to believe that the jury would have been convinced that
the defendant would have been unavailable to participate in the
murder.  Secondly, the State's case against the defendant was
particularly strong because of his 18 page statement given to
detectives and his subsequent plea allocution . . . .

As to the Alexander Jason report, the defendant asserts that he
was denied ineffective assistance of counsel because his trial
counsel failed to subpoena Mr. Jason to testify.  Mr. Jason was
retained by the State as an expert in crime scene reconstruction . . .
.  he opined that the victim's body placement was inconsistent with
the defendant's contention that she was facing the southwest corner
of the building at the time of the attack . . . .  Well, in this case,
trial counsel was aware of the expert report and the report only cast
doubt on the position of the shooter and the victim as opposed to
the entirety of the defendant's statement.  And I find that this
cannot be called a critical discrepancy in the defendant's statement

. . . .  Certainly, this is also a strategic decision and it's entitled to great deference . . . .

Also, he alleges that trial counsel failed to cross examine Det. Michael Dowling about his report and the defendant's arrest on March 26th, 1992 with respect to the controlled dangerous substance.  Also, that trial counsel failed investigate witnesses regarding the detective's effort to have the defendant hypnotized . . . .  [Defense counsel] did cross examine him very vigorously.  He cross examined him about everything the defendant said to him, about how he prepared this investigation . . . . I find when you consider the entire testimony of Det. Dowling and his entire cross examination, that there was no failure to adequately cross examine Det. Dowling.

Now, as to the failure to introduce the 1991 Asbury Park Press articles at trial.  The defendant asserts that articles about this murder should have been introduced [in evidence] to demonstrate to the jury that the defendant had knowledge of the murder details by reading the newspaper . . . .  They were talked about.  They were testified to both by the defendant and both in Det. Dowling's testimony.  So, therefore, I find that that was not a failure, that was not ineffective assistance of counsel.

He also argues that trial counsel failed to investigate certain evidence at trial that would have impeached the credibility of the State's witnesses and uncover a conspiracy to coerce him into confessing to the murder . . . .  But the point is, that the Appellate Division has already adjudicated the defendant's arguments that he was coerced into providing an incriminating statement.  In its opinion dated May 24th, 2000, the Appellate Division found that the defense's arguments of coercion were without merit . . . .  But in reviewing all of what counsel did, I find at this point there was no failure to investigate and to uncover a conspiracy and to coerce him into confessing to the murder . . . .  And there's just too many people involved here in this great conspiracy . . . .  Every single person that had anything to do with this case, this defendant feels was part of the conspiracy and they are just bare allegations.

Also, there is trial counsel's failure to question the defendant about his demeanor on July 10th, 1991 . . . [The victim's sister] observed the defendant sitting outside by himself with his head between his legs and she also observed him speaking to Joseph

39

Pandure for 10 to 15 minutes.  The defendant asserts that trial counsel deprived him of effective assistance of counsel because he did not question the defendant on his demeanor on that day.  You know, I don't know the reason why trial counsel didn't do that, but I don't think that rises to ineffective assistance of counsel.

Also, he argues that trial counsel failed to challenge Det. Coutu's credibility.  Det. Coutu was the Red Bank police detective . . . .  He states that trial counsel should have used Det. Coutu's report which included the fact that the defendant's wife and the victim were close to impeach his credibility.  He contends that his wife and the victim were not close and that this would have impeached the detective's credibility and the jury would have acquitted him.  I have no idea how that would have possibly happened or how that could have affected the outcome of this case.

Failure to challenge Det. Donovan's credibility, that's another issue that the defendant argues.  He claims that at the Miranda hearing, on July 11th, 1991, and I'll note that this Miranda hearing was a five day Miranda hearing . . . .  He claims that the detective testified that the defendant voluntarily showed up at the detective's office on July 11th, 1991.  And that Mr. Bennett terminated the interview and left the office.  He says that if trial counsel had elicited more testimony from the defendant, a very different story would have been told . . . .  There was again, vigorous cross examination of Det. Donovan . . . and his actions certainly were not ineffective.

And failure of Appellate counsel to properly raise his argument, the defendant argues he was deprived ineffective assistance of Appellate counsel because he failed to properly preserve federal issues . . . he failed to demonstrate that there was a reasonable likelihood that his claim would ultimately succeed on its merit . . . I think there were seven points, I'm sorry, eight points that counsel raised.  But the defendant raised his own issues on their pro se brief.  So there were issues that were raised . . .

Now, he also argues that the defendant, that he received ineffective assistance of counsel because his attorney only met with him nine times outside of court and failed to turn over discovery.  But he failed to demonstrate that counsel made errors so serious that he failed to fulfill the guaranty of the Fifth Amendment or that

as a result the proceedings would have been different, if he met with the defendant more than that many times.

   Also he claims that defense counsel failed to introduce evidence which would ast doubt on the defendant's statements veracity. This argument is completely without merit.  Every witness, including Det. Dowling, was cross examined in an attempt to cast doubt on the veracity of the defendant's statement.  The defendant was also called as a witness and asked about that statement.  So I find that defense counsel did not fail to introduce evidence.  Again, as I'm saying, this was a five day Miranda hearing.

   And the last argument that I'm going to deal with at this point, is the cumulative error and I'll note that the defendant has set forth his own brief where he argues other issues, but I just can't go through every single one of them.  I'm just going through the major ones that I think should be considered.  In looking at every other error that the defendant asserts, they're all the same thing.  That this was some big conspiracy and that he would not have confessed but for this conspiracy, that every single person that is involved in. And they are just bald assertions.  He argues that even if each error on its own does not constitute reversible error, then an accumulative, this Court should reverse.  The State claims that even if the Court finds there's errors, the error is harmless . . . .  I find that the defendant has provided no more than bare assertions in his brief and fails to raise a reasonable doubt as to these alleged errors that led the jury to a result which otherwise, might have been reached . . . .

   In sum, it appears to me that all the defendant's arguments deal with his confession which was ruled admissible by the Appellate Division.  His certification is rambling . . . .  There's nothing to corroborate these assertions.  Again, he alleges a conspiracy between everyone . . . and there's no evidence except his statement. So, I find that the defendant has not met the test for a further hearing in this matter and his petition for post conviction relief is denied.

(State v. Bennett, Ind. No. 96-03-0371 transcript of motion, p. 37-25 to p. 51-8 (N.J. Super., Law

Div., May 14, 2004).

This Court finds that the rejection of Petitioner's ineffective assistance of counsel claims by the New Jersey courts was not contrary to, or an unreasonable application of <u>Strickland</u> and its progeny.  Thus, Petitioner is not entitled to habeas relief on Ground Eight.

I.  Post-Judgment Discovery

In Ground Nine, Petitioner asserts:  "THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION TO COMPEL THE MONMOUTH COUNTY PROSECUTOR'S OFFICE AND/OR THE MONMOUTH COUNTY PUBLIC DEFENDER'S OFFICE TO PROVIDE DISCOVERY AND AS SUCH DENIED PETITIONER HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL."  (Pet. ¶ 12.I.)  As factual support, Petitioner states that, after the denial of his petition for post-conviction relief, Petitioner filed a motion seeking the following discovery:  confidential police report of the Ocean Township Police Department regarding an undercover drug sting operation involving Petitioner, which would show that police set up Petitioner's confession to the murder; videotapes from this sting operation corroborating Petitioner's testimony that he confessed because he was placed in fear by police; the complaints and arrest warrants for Petitioner's drug charges; all reports prepared by Detectives Dowling and Coutu; and the supplementary opinion of Judge Labrecque on the Miranda hearing.

Petitioner presented his discovery claim to the Appellate Division, which rejected the claim as follows:

> Nor has defendant presented any justifiable basis to grant his discovery request.  Accordingly, we affirm the orders denying defendant's petition for post-conviction relief and his request for additional discovery.

State v. Bennett, Docket Nos. A-2157-04T5, A-5968-03T4, 2006 WL 213920 * 6 (N.J. Super.,

App. Div., Jan. 30, 2006).

      In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held "that the

suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good

faith or bad faith of the prosecution."  See also Kyles v. Whitley, 514 U.S. 419, 433 (1995);

Giglio v. United States, 405 U.S. 150 (1972).  "There are three components of a true *Brady*

violation:  The evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; that evidence must have been suppressed by the State,

either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S.

263, 281-82 (1999).  "The evidence is material only if there is a reasonable probability that, had

the evidence been disclosed to the defense, the result of the proceeding would  have been

different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the

outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985).

      Petitioner does not contend that the failure to grant his discovery requests violates Brady.

Moreover, the Supreme Court has emphasized that there is "no constitutional requirement that

the prosecution make a complete and detailed accounting to the defense of all police

investigatory work on a case."  Moore v. Illinois, 408 U.S. 786, 795 (1972).  "If everything that

might influence a jury must be disclosed, the only way a prosecutor could discharge his

constitutional duty would be to allow complete discovery of his files as a matter of routine

practice . . . .  [T]he Constitution does not demand that much."  United States v. Agurs, 427 U.S.

97, 109 (1976).  This Court holds that the New Jersey courts' adjudication of Petitioner's

discovery claim was not contrary to, or an unreasonable application of Supreme Court precedent.

Thus, habeas relief is not available on Ground Nine.

J.  Motion for Discovery

Petitioner filed a motion [docket entry #26] for discovery pursuant to Habeas Rule 6.  See

28 U.S.C. § 2254 Rule 6.  Petitioner seeks discovery of 16 items, including a DNA analysis of

cigarette butts, fingerprinting comparisons, videotapes, court reporter notes, telephone records,

hypnosis examination, police reports and telephone records.  In his supporting certification,

Petitioner states that he has "repeatedly sought [these documents and objects] from respondents,

as well as the Public Defender's Office, which to date has not been furnished and to which

petitioner believes he is entitled for a fair and just hearing on or resolution of the assertion that

petitioner is presently in respondents' unlawful custody."  (Petitioner's Certification dated April

10, 2007, ¶ 3.)

Habeas Rule 6 provides that "[a] judge may, for good cause, authorize a party to conduct

discovery under the Federal rules of Civil Procedure [and a] party requesting discovery must

provide reasons for the request."  28 U.S.C. § 2254 Rule 6(a), (b).  The Supreme Court has held

that, "where specific allegations before the court show reason to believe that the petitioner may,

if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the

duty of the court to provide the necessary facilities land procedures for an adequate inquiry."

Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300

(1969)).  However, "[P]etitioners are not entitled to go on a fishing expedition through the

government's files in hopes of finding some damaging evidence."  Deputy v. Taylor, 19 F. 3d

1485, 1493 (3d Cir. 1994) (quoting Munoz v. Keane, 777 F. Supp. 282, 287 (S.D.N.Y. 1991),

aff'd, 964 F. 2d 1295 (2nd Cir. 1992).  "Unless the petition itself passes scrutiny, there would be no basis to require the state to respond to discovery requests."  Mayberry v. Petsock, 821 F. 2d 179, 185 (3d Cir. 1987).

    In this case, where this Court has dismissed all of Petitioner's claims on the merits, there is no need for additional discovery.  Petitioner's motion for discovery will therefore be denied.

K.  Certificate of Appealability

    The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

    Based on the foregoing, the Court dismisses the Petition with prejudice, denies Petitioner's motions, and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


                                        /s/ Joel A. Pisano
                                        **JOEL A. PISANO, U.S.D.J.**


DATED: August 20, 2007